# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:13-cv-01007-JDB-egb<br>Cr. No. 1:09-cr-10009-JDB-1 |
| FELIX JELKS, | ) ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION TO DENY AFFIDAVITS AND RESPONSE
(ECF No. 15),
TO TERMINATE THE MOTION AT ECF No. 24,
DENYING MOTION TO FILE DISC OF TRAFFIC STOP
(ECF No. 21),
DENYING AND DISMISSING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH,
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

On January 4, 2013, Defendant, Felix Jelks, filed a motion pursuant to 28 U.S.C. § 2255 and supporting memorandum[1] alleging that trial and appellate counsel provided ineffective assistance. (ECF No. 1.) On April 16, 2013, Defendant submitted an amended memorandum. (ECF No. 3.) On August 1, 2013, the Court directed the United States to respond. (ECF No. 4.) On August 23 and 26, 2013, the United States filed motions to release Defendant's former attorneys from the attorney/client privilege, which the Court granted. (ECF Nos. 5–8.) Because

---

[1]Attached to the memorandum is a document that Jelks references as the affidavit of Travis Sweet. (ECF No. 1-1 at PageID 20.) The document does not state that it was sworn to under penalty of perjury, and it also does not satisfy the formal requirements for an unsworn declaration pursuant to 28 U.S.C. § 1746.

of the delay in filing counsels' affidavits, on February 21, 2014, the Court directed the United States to file a response within ten days.  (ECF No. 11.)  On February 25, 2014, the United States filed the affidavits of Defendants' former attorneys.  (ECF No. 12.)  On March 4, 2014, the United States filed a response incorporating the affidavits and contending that Defendant's motion was without merit.  (ECF No. 14.)

On March 18, 2014, Jelks filed a motion "to deny affidavits of counsel and deny the response" because the latter was one day late.  (ECF No. 15.)  Defendant has suffered no prejudice because of the delay.  The government's response and affidavits are necessary for the Court's determination of his claims.  The motion is DENIED.

On April 3, 2014, Defendant filed a reply, and on three subsequent occasions, he supplemented his reply.  (ECF Nos. 18, 22–24.)  The last supplement filed on October 8, 2014, was captioned incorrectly as a motion.  The Clerk is directed to terminate ECF No. 24 as a pending motion.

On May 6, 2014, Jelks sought to file a copy of the audio/video disc of his traffic stop provided by former counsel.  (ECF No. 21.)  Rule 7(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules") provides, in pertinent part that, "the judge may direct the parties to expand the record by submitting additional materials relating to the motion.  The judge may require that these materials be authenticated."  The disc has not been authenticated and is not required for the Court's determination of the issues.  The motion is DENIED.

## I.    PROCEDURAL HISTORY

On February 9, 2009, a federal grand jury returned a two-count indictment against Felix Jelks and Darion Smith.  (Indictment, Criminal ("Cr.") ECF No. 3.)  Jelks was charged with

conspiracy to possess over 500 grams of cocaine with intent to distribute, in violation of 21

U.S.C. § 846 (Count One) and possession of 25.2 grams of cocaine base with intent to distribute

and distribution, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Two).  (*Id.*)  On

November 17, 2009, Defendant pled guilty to Count One of the indictment, pursuant to a written

plea agreement.  (Minute ("Min.") Entry, Cr. ECF No. 53.)

The plea agreement provided as follows:

> Come now the parties herein, the defendant, FELIX JELKS, being represented by counsel, MICHAEL L. WEINMAN, and the United States being represented by JERRY R. KITCHEN, Assistant United States Attorney for the Western District of Tennessee and hereby agree as follows.
>
> 1.    The following plea agreement constitutes the entire agreement between the parties and the parties agree that any issues not specifically addressed by this plea agreement shall be resolved by the Court in accordance with the applicable statutes, guidelines, rules and case law.
>
> 2.    The defendant agrees to plead guilty to Count 1 of the Indictment in the above-styled cause.  The defendant will pay the $100.00 special assessment prior to sentencing.
>
> 3.    There is no agreement as to the appropriate criminal history of the defendant.
>
> 4.    Should it be judged by the Government that the defendant has committed or attempted to commit any additional crimes or has engaged in any conduct constituting, obstructing or impeding justice within the meaning of United States Sentencing Guidelines Section 3C1.1 or has failed to make any court appearances in this case, from the date of the defendant's signing of this plea agreement to the date of the defendant's sentencing, or if the defendant attempts to withdraw his/her plea, the Government will be released from its obligations and would become free to argue for any sentence within statutory limits.  Such a breach by the defendant would not release the defendant from this plea of guilty.
>
> 5.    Based on the Defendant's anticipated future assistance to the Government, it is contemplated that the Government may recommend to the Court a departure in the Defendant's sentence pursuant to U.S. Sentencing Guidelines § 5K1.1 and 18 U.S.C. § 3553(e).  This would be solely within the discretion of the Government and is not part of the plea agreement.  Substantial assistance is understood by both parties to require good faith during all phases of the

cooperation period, including the Defendant's provision of complete and truthful information which assists in the investigation or prosecution of other individuals and complete and truthful testimony at subsequent proceedings when needed. The Defendant acknowledges that the Government's determination of whether the Defendant has cooperated fully and provided substantial assistance, and the Government's assessment of the value, truthfulness and completeness of the Defendant's assistance, is solely within the judgment and discretion of the Government and shall be binding upon the Defendant.

6. The parties agree that the Government will recommend the following: (1) that the Defendant receive a three-level reduction for acceptance of responsibility under U.S. Sentencing Guidelines § 3E1.1; and (2) that the Defendant be sentenced at the lowest end of the applicable guideline range.

7. The Defendant is aware that Title 18 United States Code, section 3742 affords him/her the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that he/she has discussed the appeal waiver set forth in this agreement with his/her attorney. The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the defendant's waiver of his/her right to appeal the sentence to be imposed in this case was knowing and voluntary.

8. The defendant understands and agrees that the Court will make the final determination of facts as to any sentence and as to any mitigating or aggravating factors concerning the sentence to be imposed. Adverse rulings by the Court shall not be grounds for the withdrawal of the Defendant's guilty plea or to appeal any sentence imposed. The Court is not limited to consideration of the facts and events provided by the Government.

9. There are no other agreements between and among the parties to this agreement. The defendant enters this agreement freely, knowingly, and voluntarily, and upon the advice of counsel.

(Plea Agreement, Cr. ECF. 54 at PageID 65-68.)

4

The United States summarized the evidence against Defendant at the change of plea hearing:

> Your Honor, had this matter gone to trial, the government would have presented proof that would have shown that on two occasions, one August 29, 2006, the Jackson police department was conducting an undercover operation with the – utilizing a confidential informant and the ATF, wherein they set up a drug – undercover drug purchase from the defendant. The confidential informant contacted an individual who referred the informant to the defendant. Arrangements were made to meet with the defendant at a parking lot of a business establishment called "Looking Goods" here in Jackson. That was done, and on that date, after meeting with the defendant, a transaction was done. For approximately $650, 25.2 grams of crack cocaine was transferred and sold to the confidential informant. This was under the observation of the police. It was videotaped and audiotaped by the law enforcement. In addition, Your Honor, the investigation continued with the defendant, which further proof would have shown that on October 12, 2008, the defendant had traveled to, I believe it was Royse City, Texas, or actually down to Dallas, Texas, to purchase a large quantity of cocaine. On the way back through Royse City, Texas, he was stopped by local police officers for speeding, he along with his codefendant, Darion Smith. In a subsequent investigation, officers were able to – with the aid of a K-9 dog search of the vehicle, detected narcotics. And after a search of the vehicle, officers found approximately 2,000 grams of powder cocaine and over $200,000 of cash. The defendant previously had made the statement that he came to Dallas to purchase dope. That was prior to the officer finding, I believe, the contraband. After his arrest and that of Mr. Smith, the defendant did give a tape-recorded statement wherein he admitted that he had been purchasing large quantities of cocaine and distributing it in the Brownsville, Tennessee, area. And that would have been substantially the facts had this matter gone to trial regarding his involvement. And it indicated – the drugs were tested regarding the substances that were recovered in Texas, and it did test positive for powder cocaine. I believe it was over a kilo of powder cocaine. And then the crack cocaine was tested by the TBI. That would have been the facts, Your Honor.

(Cr. ECF No. 106 at PageID 179–81.) The Court asked Jelks "is that information basically correct insofar as your involvement in this matter is concerned?" and "are you pleading guilty to [Count 1] because you're in fact guilty of that offense, sir?" (*Id.* at Page ID 181.) Defendant replied, "Yes, sir" to both questions. (*Id.*)

On November 5, 2010, Defendant filed a motion to withdraw his guilty plea. (Cr. ECF No. 98.) At the initial hearing on the motion, the Court permitted Attorney Michael Weinman to withdraw from Defendant's representation and held the hearing in abeyance pending the appointment of new counsel. (Min. Entry, ECF No.101-2.) Attorney Lee Sparks was appointed. (Cr. ECF No. 102.) The Court entered an order granting the United States' motion to release Attorney Weinman from attorney/client privilege. (Order, Cr. ECF No. 118.) The hearing resumed on February 2, 2011. (Min. Entry, Cr. ECF No. 119.) After reviewing the transcript of the guilty plea hearing and listening to the testimony of Defendant and his former counsel, the Court denied Defendant's motion to withdraw his plea, stating:

> Before the court is the motion of Felix Jelks to withdraw his plea that had previously been entered in this matter, this is in 09-10009, back in November of 2009. The court has heard the arguments of counsel, as well as the testimony presented in conjunction with this motion. The court has also received a copy of the transcript of which – of the plea colloquy the court conducted with Mr. Jelks back at that time. Of course, the burden is upon the defendant to show that there are basic -- there are substantial or appropriate grounds for withdraw of the plea. And the defendant, in making that request, must show a fair and just reason for requesting the withdraw. And that, frankly, is because these matters need to have some finality. And if the person is simply allowed, just simply because he or she feel that they have maybe undertaken a bad bargain for some reason they should just immediately be able to withdraw their plea. And, certainly, the court goes through painstakingly specific and direct questions of the defendant, as it did in this case with Mr. Jelks, to make sure that he was fully aware of what he was doing and that what he was entering into was done freely and voluntarily. Going back over the transcript, the court, as has been read by Mr. Kitchen, through various portions of that did ask Mr. Jelks if he did understand what he was doing, if he had taken any type of medication or anything of that nature that would affect his ability to understand. He freely and frankly said he did understand what he was doing. That he -- no one had put any pressure on him. That nobody threatened him. In fact, I go back to the plea colloquy, which the court called upon Mr. Kitchen to go over the potential plea agreement, that Mr. Jelks was reminded that the court will make the final determination as to any sentence, and as they were basically going through the agreement, that there were not other agreements between and among the parties to this agreement. And Mr. Jelks indicated that he did understand. Of course, his understanding is to the terms of the agreement he had with the government. He also was told about the potential

5K1 Motion that was discussed in the plea agreement. He understood that whatever -- whatever, as far as any potential departure from that, if a motion is to be made, was to be solely within the determination or decision by the government. And that if the government made that motion, then it would be up to me, would be up to the judge to decide whether or not to grant such a motion. So there were certainly nothing in this hearing that would give to the defendant the indication that there was any promise or assurance of what his sentence would be, or that if a motion for a downward departure was to be made by the government that the court was involved in any type of agreement or determine -- predetermination about what his sentence would be. It is kind of curious that Mr. Jelks would mention -- because that's the reason I asked him, because I wasn't certain -- but that somehow he was coming into the court that day to plead to 10, but that he would get five if he did plead guilty or if he got a 5K1. And, certainly, there was nothing ever mentioned in the plea colloquy about his getting 10 years or any time, other than the fact that his sentence, to which he understood, could be between five and 40 years. The court also makes note that this motion that Mr. Jelks directed Mr. Weinman, his previous attorney, to file was done almost a year after he entered his plea. That, in the court's mind, is indicative of certainly the allowance of a significant amount of time to allow pass before he made that type of decision. The defendant, frankly, and certainly in his plea colloquy, he has freely admitted he was guilty of this offense, according to what Mr. Kitchen indicated. And the defendant, he admitted in his plea colloquy that he had given a statement, a fairly damning statement of his involvement and of his guilt to these charges. So certainly that goes against him. The entry of the guilty plea, there was never any indication in the guilty plea colloquy that he was being rushed or pressured or that he was under any type of strain. He said he understood what he was doing. He had no questions of the court. He answered the questions of the court. Frankly, there is nothing to indicate any defect in that guilty plea hearing. As Mr. Kitchen also mentioned, Mr. Felix Jelks had been involved in the criminal justice system over a number of years. He has entered a substantial number of guilty pleas in the past. And the fact that he claims that he didn't listen to some of the questions I asked of him or wasn't paying attention, he was just wanting to get on with his investigation is preposterous. I frankly think that it's the most incredible bit of testimony this court has ever heard. And if it is the subject of perjury charges, I will direct the United States Attorney to make an investigation into that. It just is incredible. The prejudice to the government would be obvious, because if the government has to turn around and after a year go back and reconstruct the  -- prepare for a potential trial every time somebody decides they just made a bad bargain would always be prejudicial. Would be prejudicial to a defendant if the government was to yank the rug out from under him or her after a year after the person pled guilty, said we're not going to accept that plea any more, we're not going to do what we said. It just -- it -- certainly the potential for prejudice is obvious. The reasons that Mr. Jelks says that he wants to withdraw his plea is because Mr. Weinman, who is an attorney that this court is familiar with, who has practiced in front of this court for a number of years as a criminal

defense lawyer, he's well qualified, he has been here a number of times, he's been on the Criminal Justice Act Appointment Panel for a number of years. And Mr. Weinman has testified that he never promised Mr. Jelks a specific sentence. He tried to give him his best estimate, considering all the circumstances surrounding this, including his cooperation, that type of thing. Frankly, I just do not believe that Mr. Weinman made that promise. I think that Mr. Jelks' recitation of that statement, again, is absolutely incredible. It is not true. The court credits Mr. Weinman as being a person who is a good lawyer, as a person who has proceeded in this courtroom on a number of occasion, is qualified to represent defendants. And, frankly, based on what I could hear, did everything he could to help Mr. Jelks obtain a reduced sentence, based upon his cooperation and the meeting with this FBI agent. The fact that the FBI didn't find – I mean, Mr. Jelks apparently couldn't give them enough information to go forward with. That's not the FBI's fault. That's not Mr. Weinman's fault. So as far as this court is concerned there is no basis for this motion to withdraw. The court does not give credence to Mr. Jelks' testimony, what he claims Mr. Weinman told him. And I just, again, find that that's not accurate, it's not credible, and certainly didn't happen as far as the court is concerned. For all of those reasons, the court denies the motion to withdraw the plea. We have a guilty plea that's been entered, and we need to set this matter for sentencing.

(Cr. ECF No. 134 at PageID 355–61.)

At the sentencing hearing held on April 6, 2011, Attorney Sparks argued that, despite Defendant's attempt to withdraw his guilty plea, he should receive consideration for his cooperation with the United States. (Cr. ECF No. 133 at PageID 268.) The United States responded:

[W]hen the defendant came forward with that information, we made – we made that information known to the FBI. We did begin that investigation; however, I believe at one point it came to a standstill. That was when the defendant began his inquiries into filing a motion to withdraw his guilty plea. Just as a matter of refreshing the court's memory as to what occurred, at that point the FBI agent, then during that process of that motion being filed, contacted me with the idea of showing the defendant a photo line-up. I passed that information on to defense counsel. And the response back was, only if we dismissed his charge would he then agree to cooperate further. Which of course, we were not inclined to do so. We then went forward on with the motion, which, of course, the court denied. And a revised presentence report was filed.

I received a letter from the defendant taking now a new position in his multi-position stance of his guilty plea, which now is back to, he's guilty, he listened to

jail house lawyers and what not. But the FBI agent was still interested in seeing if the defendant would look at a photo line-up. I passed that on to Mr. Sparks. And if that deal would occur, it would only – it would be very important for them to know. . . [but] the defendant has now committed perjury now on the stand. . . his credibility as a witness has – has certainly been damaged. And any worth that he would have as far as being useful as a government witness is nonexistent now. . .

(*Id.* at PageID 269–70.) When the Court asked the Defendant if he wanted to make a statement, he told the Court:

I know I lied under oath. I'm sorry. I didn't mean to do that. I was just trying to get out of it, because I was – I didn't know who was trying to get me.

(Id. at PageID 278.)

The Court sentenced Jelks to three hundred sixty months, to be followed by a four-year term of supervised release. (Min. Entry, Cr. ECF. 127.) Because Defendant had attempted to withdraw his guilty plea, the United States did not file a motion for a downward departure and Defendant did not receive a three-level reduction for acceptance of responsibility. (Cr. ECF No. 133 at PageID 280; Presentence Report ("PSR") at ¶¶ 18, 31, 100.) He received a two-level upward adjustment in the offense level as he was determined by the Court to be an organizer, leader, manager, or supervisor. (Cr. ECF No. 133 at PageID 280; PSR at ¶ 27.) Because Defendant committed perjury in the evidentiary hearing on the motion to withdraw his plea, he received a two-level upward adjustment for obstruction of justice. (Cr. ECF No. 133 at PageID 280; PSR at ¶¶ 16–17, 28.) Jelks' restricted guideline range was three hundred sixty months to four hundred eighty months in prison. (PSR at ¶ 98.) The Court's judgment was entered on April 7, 2011. (Judgment ("J."), Cr. ECF No. 128.)

On April 13, 2011, Defendant filed a *pro se* notice of appeal. (Cr. ECF No. 130.) After the United States Court of Appeal for the Sixth Circuit extended Attorney Sparks' appointment under the Criminal Justice Act, Sparks filed an *Anders* brief, and a motion to withdraw. (Cr.

ECF No. 142.)  The Sixth Circuit granted counsel's motion to withdraw and affirmed this

Court's judgment, stating:

> Jelks's attorney has filed a motion to withdraw and a brief indicating that
> there are no colorable issues to appeal.  *See Anders v. California*, 386 U.S. 738,
> 744 (1967).  Consistent with the requirements of *Anders*, counsel has identified a
> potentially arguable point by discussing whether the district court's sentencing
> determination was reasonable.  Jelks has filed a *pro se* response to counsel's
> motion and a motion for the appointment of new counsel on appeal.  However, an
> independent examination of the proceedings shows that his attorney made an
> adequate review of the record and that there is no viable issue to appeal.

> Jelks signed a plea bargain in which he agreed to plead guilty to the charge
> that is described above.  The agreement contained the following waiver of his
> right to appeal:

>> The Defendant is aware that Title 18 United States Code,
>> section 3742 affords him/her the right to appeal the sentence
>> imposed in this case.  Acknowledging this, in exchange for the
>> undertakings made by the United States in this plea agreement, the
>> defendant hereby waives all rights conferred by Section 3742 to
>> appeal any sentence imposed, including any restitution order, or to
>> appeal the manner in which the sentence was imposed, unless the
>> sentence exceeds the maximum permitted by statute or is the result
>> of an upward departure from the guideline range that the court
>> establishes at sentencing.

> We review the waiver of a defendant's right to appeal *de novo*.  *United
> States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005).  In the present case, the
> district court properly confirmed Jelks's understanding of the plea agreement,
> including the waiver of his appellate rights.  *See id.* at 363.  Moreover, a *de novo*
> review of the record shows that the waiver was valid.  The district court
> determined that Jelks was competent when he was rearraigned.  It also advised
> him of his constitutional rights, the nature of the charges, and the consequences of
> pleading guilty.  Jelks indicated that the decision to plead guilty was voluntary,
> and he acknowledged a sufficient factual basis for his plea.  Under these
> circumstances, his guilty plea was constitutionally valid and the district court
> substantially complied with the procedural requirements for accepting his plea.

> Jelks subsequently moved for leave to withdraw his guilty plea.  The
> district court held two hearings on Jelks's motion after appointing his current
> attorney to represent him.  Jelks testified that his former attorney had promised
> him that he would receive a sentence of only five years of imprisonment if he
> pleaded guilty.  Former counsel flatly denied that he had made such a promise and

testified that he had only advised Jelks of the sentence that he might receive if the government determined that Jelks provided substantial assistance in its investigations. The district court credited counsel's testimony and denied the motion to withdraw. Jelks later admitted at sentencing that he had "lied under oath" because he "was just trying to get out of it."

We review the district court's decision to deny Jelks's motion to withdraw for an abuse of discretion. *See United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998). "If a motion to withdraw a plea of guilty or *nolo contendre* is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." Fed. R. Crim. P. 32(e). Jelks has not met that burden here.

Jelks waited almost a year before submitting his motion to withdraw, and he did not present a convincing justification for this delay. He clearly admitted his guilt at rearraignment, and he could have gained a significant advantage by pleading guilty. Moreover, Jelks was familiar with the criminal justice system, as he had entered numerous guilty pleas in the state courts. Finally, there is no indication that the government would not have been prejudiced by the withdrawal of his guilty plea. In light of these factors, the district court acted within its discretion by denying the motion to withdraw Jelks's plea. *See Pluta*, 144 F.3d at 973-74 (citing *Bashara*, 27 F.3d at 1181).

As indicated above, Jelks waived the right to appeal any sentence that did not exceed the statutory maximum for his offense or the guideline range that the court established at sentencing. Jelks had a total offense level of thirty-eight and a criminal history category of V, which yielded a guideline range of 360 months to life imprisonment. The upper end of that range was restricted by the 480-month statutory maximum. *See* 21 U.S.C. § 841(b)(1)(B); USSG § 5G1.1(a). Thus, Jelks has waived the right to appeal his sentence because the 360-month sentence that he received did not exceed the applicable guideline range or the statutory maximum for his offense. *See United States v. Robinson*, 455 F.3d 602, 610 (6th Cir. 2006); *McGilvery*, 403 F.3d at 362-63.

We note, nonetheless, that the district court considered the parties' arguments at sentencing and imposed a sentence that was not unreasonable. The 360-month sentence that Jelks received fell at the bottom of the applicable guideline range. The court also considered the other sentencing factors that are listed in 18 U.S.C. § 3553(a), including Jelks's extensive criminal history and the seriousness of his criminal activity. Thus, his sentence is neither procedurally nor substantively unreasonable and he has waived any sentencing issue that he might have on direct appeal. Jelks indicated that he was satisfied with his attorney's representation when he was rearraigned, and there is nothing in the present record to show that counsel's performance was deficient in a constitutional sense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Hence, any ineffective-

assistance claim that Jelks might have would properly be raised in a motion to vacate his sentence under 28 U.S.C. § 2255, rather than on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504-05 (2003).

Accordingly, counsel's motion to withdraw is granted, all other pending motions are denied, and the district court's judgment is affirmed. Rule 34(j)(2)(C), Rules of the Sixth Circuit.

(*Id.* at Page ID 379–82.)

On January 4, 2013, Jelks filed this motion to vacate alleging that Attorney Weinman provided ineffective assistance:

(1)     By failing to file a motion to suppress (ECF 1-1 at PageID 12); and

(2)     By advising him to plead guilty (*id.* at PageID 12–13).

Defendant also contended that Attorney Sparks provided ineffective assistance:

(3)     By failing to raise on appeal the Court's violation of Rule 11(d) and the validity of his guilty plea (*id.* at PageID 13–14).

## II.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. *See Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id.*

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698–99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698–99

(6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

"[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999*); see also DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (same).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rule 4(b), Section 2255 Rules. "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), Section 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also presided over the criminal case, the

judge may rely on his or her recollection of the prior case.  *Blanton v. United States*, 94 F.3d 227,

235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion

under § 2255 is ordinarily presented to the judge who presided at the original conviction and

sentencing of the prisoner.  In some cases, the judge's recollection of the events at issue may

enable him summarily to dismiss a § 2255 motion . . . .").  Defendant has the burden of proving

that he is entitled to relief by a preponderance of the evidence.  *Pough v. United States*, 442 F.3d

959, 964 (6th Cir. 2006).

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth

Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*,

466 U.S. 668 (1984).  To demonstrate deficient performance by counsel, a petitioner must

demonstrate that "counsel's representation fell below an objective standard of reasonableness."

*Id.* at 688.

> A court considering a claim of ineffective assistance must apply a "strong
> presumption" that counsel's representation was within the "wide range" of
> reasonable professional assistance.    [*Strickland*, 466 U.S.] at 689.    The
> challenger's burden is to show "that counsel made errors so serious that counsel
> was not functioning as the 'counsel' guaranteed the defendant by the Sixth
> Amendment." *Id.*, at 687.

*Harrington v. Richter*, 131 S. Ct. 770, 787 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694.[2]  "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.*

---

[2]"[A] court need not determine whether counsel's performance was deficient before
examining the prejudice suffered by the defendant . . . ." *Strickland*, 466 U.S. at 697.  If a

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S. Ct. 2052.

*Richter*, 131 S. Ct. at 787–88; *see also id.* at 791–92 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." (citing *Strickland*, 466 U.S. at 694)).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 131 S. Ct. at 788.

---

reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

## III.    ANALYSIS

Jelks' appellate waiver did not encompass claims of ineffective assistance on collateral review.

### A.    Counsel's Failure to File a Motion to Suppress

Defendant contends that the traffic stop by Royse City Police was unconstitutional.  (ECF No. 1-1 at PageID 12.)  Pursuant to *Terry v. Ohio*, 392 U.S. 1, 30 (1968), a police officer is permitted to make a brief investigatory stop when he has a reasonable suspicion that criminal activity may be afoot.  The United States responds that Jelks' contention of an inadequate investigation is strongly undermined by his own plea colloquy.  (ECF No. 14 at PageID 86.)

Attorney Weinman filed a sworn affidavit stating, in part:

> On March 16, 2009 I was appointed under the CJA to represent Felix Jelks on a 2 count Indictment, one count for conspiracy to possess and/or distribute over 500 grams of cocaine and one count of possession with intent to distribute 25.2 grams of crack cocaine.  The Defendant had been previously represented by the Federal Defender's office who had filed a discovery request on February 24, 2009.  I also filed a discovery request on behalf of Mr. Jelks on April 20, 2009.

> I subsequently met with Mr. Jelks at the Federal Detention Center in Mason, Tennessee to review the discovery provided by the government and talk about his case.  In the discovery there was a video recording of an interview done with Mr. Jelks in Texas after his arrest there.  On that tape Mr. Jelks, after being *Mirandized*, and signing a written *Miranda* waiver, admitted to his involvement in trafficking cocaine from Texas to Tennessee on numerous occasions.  We also reviewed the information provided about the arrest and search of his vehicle and discussed our defenses, including the possibility of filing a motion to suppress the drugs and money found in his vehicle and his statement.  Given his admissions recorded on the tape and the fact that he had already provided the government with information about co-conspirator(s) that had led to an arrest in Texas shortly after his arrest, Mr. Jelks indicated he wanted me to talk to the U.S. Attorney prosecuting his case about the possibility of the government filing a 5K1 Motion for substantial assistance asking the Court to impose a lower sentence if he were to plead guilty.

> Following that meeting, I spoke with AUSA Jerry Kitchen who indicated that, based on the assistance that Mr. Jelks had already provided the government,

if Mr. Jelks pled guilty he believed he would be willing to make the 5K1 Motion at sentencing asking the court for a reduced sentence. I subsequently relayed this to Mr. Jelks and after much discussion about possible strategies he indicated that he wanted to change his plea to take advantage of the assistance he had provided to the government to try and get a lower sentence. As I do with all my clients that provide assistance to the government in hopes of getting a 5K1 Motion, we reviewed the Sentencing Guidelines and talked about my experience with 5K1 Motions and what impact I thought the Motion, if made, might have on his ultimate sentence. As I tell all of my clients in that situation, I told him that the final decision to make the Motion was up to the government and the ultimate sentence was up to the Judge at sentencing and, therefore, I could not promise, guarantee, or state with certainty how his cooperation would ultimately affect the sentence imposed by the Court.

…

At some point around the date of the Change of Plea Hearing, Mr. Jelks and I met and he told me that he had some further information that he wanted to provide to the government that he thought might help him with his sentence. Mr. Jelks told me that for some time he had been paying large sums of money to a man that had contacted him and identified himself as a federal agent who could keep him from getting arrested and charged with drug activity. According to Mr. Jelks, for many months he had meetings with this man and made payments of over $100,000.00 in cash to him. Mr. Jelks believed that the man had kept him from being arrested for his drug activity. Mr. Jelks did not know the name of the man or what agency he allegedly worked for but indicated that he could identify him if he saw him. Mr. Jelks indicated that he wanted me to notify AUSA Kitchen about this situation and his willingness to assist the government in an investigation of this person if it might help him receive a lower sentence. I subsequently met with Jerry Kitchen who indicated that the government would investigate these claims and said an agent would be contacting me to set up a meeting with Mr. Jelks. Mr. Jelks and I subsequently met with federal agents on more than one occasion about this issue. Ultimately, I do not believe the agents were able to identify the individual based on the information that Mr. Jelks provided. AUSA Kitchen and I agreed to continue Mr. Jelks' sentencing on multiple occasions to give the agents the opportunity to complete their investigation.

Sometime around late September or early October of 2010 Mr. Jelks advised me that he wanted to withdraw his guilty plea. I met with him on October 19, 2010, and discussed this with him. I told him that I believed it was a mistake to file a Motion to Withdraw his plea as it was possible that the Court would not grant it, he would likely lose the potential benefit of his assistance to the government, and it would likely result in a lengthier sentence for him. I sent him a letter explaining this to him. Despite my warning he insisted that I file the

Motion to withdraw his plea, which I did. Mr. Jelks wrote a letter to the Court indicating that I had made a promise to him about the sentence he would receive if he pled guilty. This was not true and because of this false representation to the Court about our communications I had no choice but to file a Motion to Withdraw as Counsel, which the Court granted after a hearing. I have had no contact with Mr. Jelks or any involvement with his case since the Court entered the Order allowing me to withdraw.

(ECF No. 14-1 at PageID 91–94, ¶¶ 1–3, 5–6.)

The record supports counsel's recollection that both he and former counsel requested and received discovery from the United States pursuant to Fed. R. Crim. P. 16. (Cr. ECF Nos. 20, 34.) After reviewing the discovery Jelks and counsel decided that Jelks would benefit most, based on his previous cooperation with the government, by pleading guilty to a negotiated plea agreement containing provisions for recommendations by the government that Jelks' receive a three-level reduction for acceptance of responsibility, a sentence at the lowest end of the applicable guideline range, and the possibility of a 5K1 motion. The decision to forego a motion to suppress was a well-reasoned strategic decision. Jelks contention that he wanted counsel to file a motion to suppress is unsupported by the record and unbelievable based on the overwhelming, incriminating evidence against him. Jelks has failed to establish deficient performance or prejudice.

B.    Counsel's Advice to Plead Guilty

Defendant contends that Weinman promised him that the United States would make a 5K.1 motion and promised him a specific sentence. (ECF No. 1-1 at PageID 13.) Jelks' argument consists of the allegations rejected by this Court during the evidentiary hearing on his motion to withdraw his plea. He now insists that these unsupported and discredited allegations establish ineffective assistance. The transcripts in this case belie his allegations. Jelks committed perjury during these proceedings in an attempt to withdraw his plea. He presents the

Court with no facts meriting reconsideration of the issue. The claim remains incredible and untrue. Counsel did not provide ineffective assistance by advising Jelks to enter a guilty plea to the negotiated plea agreement providing him with great benefit at sentencing. Any prejudice in this case resulted from Jelks' failure to accept counsel's sage advice.

C.     Counsel's Failure to Challenge the Validity of the Guilty Plea on Appeal

Jelks contends that appellate counsel failed to investigate the plea colloquy for Rule 11 violations and to determine if his plea was voluntary. (ECF No. 3 at PageID 23.) Contrary to Defendant's allegation, Attorney Sparks reviewed the record for any meritorious appealable issue before certifying that none existed. (ECF No. 14-2 at PageID 97.) The Sixth Circuit Court of Appeals independently examined the record and found "that his attorney made an adequate review of the record and that there is no viable issue to appeal. (Cr. ECF No. 142 at PageID 379–80.) The appellate court determined that Jelks' plea was knowing and voluntary and that the district court complied with the procedural requirements for accepting his plea. (*Id.* at PageID 380–81.)

He presents no facts or argument sufficient to avoid *DuPont*'s limitation on review of this claim. Furthermore, counsel was not ineffective by failing to raise and pursue frivolous issues. Defendant has failed to establish either prejudice or ineffective assistance.

IV.     **CONCLUSION**

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Defendant's conviction and sentence are valid and, therefore, his motion to vacate (ECF No. 1) is DENIED. Judgment shall be entered for the United States.

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

A COA may issue only if the movant has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2)–(3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).

A COA does not require a showing that the appeal will succeed, *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011), however, courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337).

In this case, for the reasons previously stated, Defendant's claim lacks substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)–(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255

case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). *Id.* at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)–(5).

In this case, for the same reasons it denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED.

If Defendant files a notice of appeal, he must also pay the full $505 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days (*see* Fed. R. App. P. 24(a)(4)–(5)).

**IT IS SO ORDERED** this 23rd day of February, 2015.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE